UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| JOHN WILLIAMS, individually, and on behalf of a class of similarly situated individuals,<br><br>Plaintiff,<br><br>vs.<br><br>GENERAL MOTORS LLC, a Delaware Limited Liability Company,<br><br>Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

1. Plaintiff John Williams, individually, and on behalf of all persons in California and the United States who purchased or leased any Model Year 2019 to 2025 Chevrolet Malibu, 2021 to 2025 Chevrolet Trailblazer, 2024 to present Chevrolet Equinox, and 2024 to present GMC Terrain vehicles equipped with a continuously variable transmission (RPO MRG (VT40 or TR690) ("CVT") designed, manufactured, marketed, distributed, sold, warranted, and/or serviced by Defendant General Motors LLC ("GM" or "Defendant") ("Class Vehicles" or "Vehicles"), brings this action. Plaintiff alleges as follows:

## INTRODUCTION

2. This is a consumer class action concerning a failure to disclose material facts and a safety concern to consumers.

3. Defendant manufactured, marketed, distributed, and/or sold the Class Vehicles without disclosing that the Class Vehicles' CVTs and related components, including the clutch regulator valve, valve body, drive chain, pulleys (sheaves), and bearings ("Transmission System"), were defective.

4. Specifically, Plaintiff is informed and believes, and based thereon alleges, that the defective clutch regulator in the Class Vehicles results in sudden slipping, shuddering, juddering, hesitation, delayed acceleration, loss of forward gear, and partial or complete loss of motive

power during normal driving (the "CVT Defect" or "Defect"). As further described below, discovery will show that improperly designed and/or manufactured internal transmission components, including the clutch regulator valve, valve body, drive chain, pulleys, and bearings, result in these failures, including clutch regulator valve sticking, chain and pulley damage, bearing damage, and resulting transmission failure.

5. Among the most concerning consequences of the CVT Defect is the sudden and complete loss of motive power that occurs while the vehicle is in motion, often at highway speeds. Owners report a reduced engine power warning, hesitation, and slipping, followed by the vehicle's inability to accelerate or maintain speed, and, in many cases, a complete loss of forward gear that leaves the vehicle unable to move. The abrupt loss of motive power places drivers, passengers, and surrounding motorists at imminent risk of collision and serious injury.

6. Additionally, drivers frequently describe the onset of the failure as slipping, shuddering, or a sudden "reduced engine power" warning, followed by an immediate loss of acceleration and, in some instances, stalling in an active lane of traffic. In many cases, the malfunction indicator light does not illuminate before the failure occurs, and dealers are unable to reproduce the condition. These events occur without warning and leave drivers stranded in active traffic lanes or on highway shoulders, creating an acute and unreasonable safety hazard.

7. Defendant sold the Class Vehicles with a 5-year/60,000-mile Limited Powertrain Warranty ("LPW"), which expressly covers the engine, transmission, drive system, and transaxle, in addition to a 3-year/36,000-mile bumper-to-bumper New Vehicle Limited Warranty ("NVLW"). These warranties obligate GM to repair or replace defective powertrain components, including the continuously variable transmission, at no cost to the owner or lessee. Nonetheless, numerous Class Vehicle owners have experienced CVT failure both within and outside the applicable warranty periods. In many cases, GM and its authorized dealers have denied coverage, attributed the defect to "normal operation," been unable to duplicate the condition, or performed superficial repairs that fail to correct the underlying condition. As a result, consumers are left with vehicles that suffer recurring failures, diminished safety, and substantial out-of-pocket expenses for transmission replacement and related damage.

8. GM's authorized dealerships are replacing and repairing CVTs both within, and just outside, the applicable express warranty periods.

9. The CVT Defect is inherent in each Class Vehicle and was present at the time of sale.

10. Discovery will show that, since 2021, if not earlier, Defendant has been aware the Class Vehicles' transmissions were prone to premature internal failure, including clutch regulator valve sticking, chain and pulley damage, bearing damage, slipping, and loss of forward gear. Defendant knew that the CVT Defect would cause the symptoms described above, including slipping, shuddering, hesitation, sudden loss of motive power, and complete transmission failure.

11. Moreover, many owners have reported repeated transmission-related repairs that did not resolve the condition, demonstrating that Defendant has not implemented a permanent fix. Defendant not only refused to disclose the problem to consumers, but also actively concealed, and continues to conceal, its knowledge concerning the CVT Defect. Internal reports, warranty claim data, and dealership repair orders will confirm that GM has long been aware that the software and hardware solutions implemented thus far are inadequate, yet it continues to market and sell affected vehicles without disclosing the ongoing risk to consumers.

12. Defendant undertook affirmative measures to conceal transmission failures and other malfunctions through, among other things, Technical Service Bulletins ("TSB") and Preliminary Information bulletins ("PIP") issued to authorized repair facilities only.

13. Indeed, public records confirm that GM has issued multiple Technical Service Bulletins ("TSBs"), Preliminary Information bulletins ("PIPs"), and related internal communications acknowledging CVT slipping, shudder, judder, hesitation, and loss of forward gear—symptoms consistent with the CVT Defect. These documents demonstrate that GM was aware of recurring transmission failures in the Class Vehicles well before Plaintiff and Class Members purchased or leased their vehicles.

14. Publicly available bulletins include TSB 24-NA-009, TSB 16-151-24R, and PIP No. 6033, each of which evidence conditions tied to premature CVT failure. Although certain bulletins were issued as recently as 2024 and 2025, they apply directly to the Class Vehicles

because the same or substantially similar CVT design and architecture, reflected in the VT40 (RPO MRG) and TR690 families, was used across the Chevrolet Malibu, Chevrolet Trailblazer, Chevrolet Equinox, and GMC Terrain.

15. Defendant had superior and/or exclusive knowledge of material facts regarding the CVT Defect due to its pre-production testing, design failure mode analysis, aggregate part sales, consumer complaints about the Defect to Defendant's dealers, who are its agents for vehicle repairs, customer complaints made directly to GM, dealer audits, aggregate warranty information, consumer complaints to and resulting notice from NHTSA, early consumer complaints on websites and internet forums, dealership repair orders, among other internal sources of information about the problem.

16. Despite widespread field reports describing CVT slipping, shudder, and loss of forward gear, GM has not implemented an effective repair that addresses the root cause of the CVT Defect. Service guidance given to dealers has often characterized abnormal transmission behavior as "normal" or not reproducible or directed diagnostic and repair procedures that fail to correct the underlying condition, leaving consumers with vehicles that remain unsafe and unreliable.

17. The CVT Defect is material because, inter alia, it poses a safety concern. As attested by Class Members in complaints to the National Highway Traffic Safety Administration ("NHTSA") and other online forums, when the transmission fails, the vehicle may abruptly lose motive power and the ability to accelerate, slip out of gear, or stall, thereby increasing the risk of collision and injury.

18. Defendant's failure to disclose the CVT Defect has caused Plaintiff and putative class members' Vehicles to suffer transmission failure, and Plaintiff and putative class members to suffer diminished safety, and/or incur costly repairs that have conferred an unjust substantial benefit upon Defendant.

19. Discovery will show that, in an effort to conceal the CVT Defect, Defendant instructed dealers to tell consumers their vehicles are "operating normally" or "operating as intended" when they are not, or to give excuses for subpar performance. This is a common

practice in the automotive industry and has occurred here in connection with the CVT Defect. By denying the existence of a defect, manufacturers can play on consumers' lack of technical expertise and avoid implementing potentially costly fixes for years, or at least until the vehicles are out of warranty. When remedial measures are taken, they are often through the issuance of service bulletins provided to dealers only that are narrowly crafted and underinclusive, as occurred here and set forth below.

20. Had Defendant disclosed the CVT Defect, and the inadequacy of the service bulletin remedies, Plaintiff and Class Members would not have purchased and/or leased the Class Vehicles, would have paid less for them, or would have required Defendant to replace, or pay for the replacement of, the defective Transmission System and/or CVT components with non-defective versions before their warranty periods expired.

## THE PARTIES

**Plaintiff John Williams**

21. Plaintiff John Williams is a California citizen residing in Sacramento, California.

22. On or around October 2024, Plaintiff purchased a new 2025 Chevrolet Equinox RS (VIN 3GNAXTEG3SL139320) from Epic Chevrolet, an authorized GM dealership in Sacramento, California, for a purchase price of $36,587.12. The vehicle had approximately 17 miles on the odometer at the time of purchase.

23. Plaintiff purchased his vehicle primarily for personal, family, or household use, as his primary personal vehicle.

24. Passenger safety and reliability were important factors in Plaintiff's decision to purchase his vehicle. Before making his purchase, Plaintiff researched the Chevrolet Equinox, including online. At the dealership, Plaintiff also reviewed the vehicle's Monroney Sticker or "window sticker," which listed official information about the vehicle, and discussed the vehicle with dealership personnel, who made no reference to the CVT Defect.

25. GM's omissions were material to Plaintiff. Had GM disclosed its knowledge of the CVT Defect before he purchased his vehicle, Plaintiff would have seen and been aware of the

disclosures. Furthermore, had he known of the CVT Defect, Plaintiff would not have purchased his vehicle.

26. Shortly after purchase, Plaintiff began experiencing CVT problems. Specifically, following his first oil change, at approximately 7,000 miles, Plaintiff noticed rough shifting, delayed acceleration, and lagged shifting and response.

27. At approximately 14,000 miles, Plaintiff reported the rough shifting and shaking he experienced during acceleration and braking to the dealership, which remained within the coverage period of GM's New Vehicle Limited Warranty and Limited Powertrain Warranty. Rather than diagnose or repair the transmission, the dealership diagnosed the vehicle as having defective front axles, which were replaced, and advised Plaintiff that his transmission fluid had been "topped off."

28. Despite bringing his vehicle to a GM dealership—GM's authorized agent for repairs—Plaintiff has not received a permanent repair under warranty, and his vehicle continues to exhibit the CVT Defect.

29. As a result of the CVT Defect, Plaintiff has lost confidence in the ability of his Class Vehicle to provide safe and reliable transportation for ordinary and advertised purposes. Further, Plaintiff will be unable to rely on the Class Vehicle's advertising or labeling in the future and so will not purchase or lease another Class Vehicle, although he would like to do so.

30. At all times, Plaintiff, like all Class Members, has driven his vehicle in a manner both foreseeable and in which it was intended to be used.

**Defendant**

31. Defendant General Motors LLC ("GM") is a limited liability company organized and in existence under the laws of the State of Delaware, with its principal place of business located at 300 Renaissance Center, Detroit, Michigan 48243. GM is engaged in the business of designing, manufacturing, constructing, assembling, marketing, distributing, and selling automobiles and motor vehicle components in California and throughout the United States of America. GM also drafts and distributes technical materials, including service manuals, TSBs,

PIPs, and recall notices, intended to be used by authorized dealerships in the service and repair of GM-branded vehicles.

32. In order to sell vehicles to the general public, GM authorizes dealerships to sell GM-branded vehicles to consumers such as Plaintiff. In return for the exclusive right to sell new GM vehicles in a geographic area, authorized dealerships are also permitted to service and repair these vehicles under the warranties GM provides directly to consumers. These contracts give GM a significant amount of control over the actions of the dealerships, including the sale and marketing of vehicles and parts. All service and repairs at an authorized dealership are completed according to GM's explicit instructions, issued through service manuals, TSBs, and other documents. GM has a nationwide dealership network and operates offices and facilities throughout the United States. GM distributes parts and vehicles, which are then sold through its network of dealerships. Money received from the purchase of a GM vehicle from a dealership flows from the dealer to GM.

33. Defendant developed and disseminated the marketing materials to which Plaintiff and the Class were exposed, including owner's manuals, informational brochures, warranty booklets, and information included in maintenance recommendations and/or schedules for the Class Vehicles, and other promotional materials relating to the Class Vehicles, all of which fail to disclose the Defect.

34. Defendant designed, manufactured, constructed, assembled, marketed, distributed, sold, and warranted the Class Vehicles, including Plaintiff's vehicle.

## JURISDICTION

35. This is a class action.

36. Members of the proposed Class are citizens of states different from the home states of Defendant.

37. There are at least 100 members in the proposed Class, and the aggregate claims of individual Class Members exceed $5,000,000.00 in value, exclusive of interest and costs.

38. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(d) because minimal diversity exists, the proposed Class exceeds 100 members, and the amount in controversy

exceeds $5 million. This Court also has federal question jurisdiction under 28 U.S.C. § 1331 because Plaintiff's claim under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, et seq., arises under federal law, and supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

39. This Court has personal jurisdiction over Defendant General Motors LLC because GM is a Delaware limited liability company organized under the laws of the State of Delaware and is therefore "at home" in Delaware for purposes of general jurisdiction.

**VENUE**

40. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant General Motors LLC is a Delaware limited liability company and is deemed to reside in this District for venue purposes. As GM resides in this District within the meaning of § 1391(c)(2), venue is proper regardless of where Plaintiff resides or where his injuries occurred. Plaintiff's counsel's declaration required pursuant to California Civil Code section 1780(d) is attached hereto as Exhibit A.

**FACTUAL ALLEGATIONS**

41. Defendant designed, manufactured, distributed, marketed, sold, and/or leased the Class Vehicles. Defendant sold, directly or indirectly, through dealers and other retail outlets, thousands of Class Vehicles in California and nationwide. Defendant warrants and services the Class Vehicles through its nationwide network of authorized dealers and service providers. Defendant exercises control over the development, dissemination, and implementation of technical service bulletins, preliminary information bulletins, recall notices, and repair procedures related to the Transmission System in the Class Vehicles.

42. The Transmission System in the Class Vehicles is a continuously variable transmission ("CVT") marketed and deployed under the VT40 (RPO MRG) and TR690 designations that shares common valve-body, drive-chain, pulley (sheave), bearing, and case-casting architecture across models. Rather than using conventional fixed gears, the CVT uses a belt or chain running between variable-diameter pulleys, electronically controlled by a

transmission control module, to vary the drive ratio; the design depends on precise fluid pressure and valve-body operation to transmit power.

43. In the Class Vehicles, this transmission architecture, namely a defective clutch regulator, has manifested in slipping, shudder, judder, hesitation, delayed acceleration, loss of forward gear, and complete loss of motive power under ordinary driving, in many instances with no advance warning lights. Owners have reported sudden loss of propulsion and internal damage consistent with clutch regulator valve sticking, chain and pulley damage, and bearing distress, requiring transmission replacement or extensive repair. Field reports describe a progression from slipping and shudder to an inability to accelerate, followed by a complete loss of forward gear and roadside disablement despite prior service visits.

44. GM issued TSB 24-NA-009, applicable to MY2019–2025 Chevrolet Malibu and MY2021–2025 Chevrolet Trailblazer FWD vehicles equipped with the VT40 CVT (RPO MRG). The bulletin addresses loss of forward gear or CVT slipping and identifies the root cause as the clutch regulator valve sticking in the valve body. The bulletin advises that the malfunction indicator light may illuminate with diagnostic trouble code (DTC) P2714 ("Transmission Control Solenoid Valve Four Stuck Off"), that the sticking valve can also damage the forward clutch piston and/or the primary pulley bearing bore and, in turn, the transmission case, and that the condition may be intermittent or not reproducible by the dealer.

45. GM issued Service Bulletin No. 16-151-24R (initially released in 2024 and revised through at least July 30, 2025), which provides diagnostic guidance for chain slip, judder, shudder, and hesitation concerns on TR690 CVT-equipped vehicles, including the Chevrolet Equinox, GMC Terrain, Chevrolet Trailblazer, and Chevrolet Malibu. The bulletin directs technicians to consult it before any previously released material when addressing CVT drivability complaints and includes an updated "Lockup Judder Type A" test-drive diagnostic protocol. The bulletin was revised multiple times, reflecting persistent field reports that prompted updated guidance.

46. GM issued Preliminary Information Bulletin No. PIP6033 (dated December 11, 2024), covering 2022–2024 Buick Encore GX, 2025 Chevrolet Equinox, 2022–2024 Chevrolet

Malibu, and 2022–2024 Chevrolet Trailblazer vehicles. The bulletin addresses CVT noise, slip, or complete loss of motion, and identifies possible causes as a damaged drive chain, damage to the primary or secondary pulleys (sheaves), or bearing damage. The bulletin acknowledges that the condition may occur with or without an illuminated check-engine light or a stored DTC.

47. GM's bulletins acknowledge phenomena tied to this architecture, including the clutch regulator valve sticking in the valve body and setting DTC P2714 (TSB 24-NA-009); chain slip, judder, shudder, and hesitation (TSB 16-151-24R); and CVT noise, slip, or complete loss of motion caused by a damaged drive chain, pulley (sheave) damage, or bearing damage (Preliminary Information Bulletin No. PIP6033). These conditions increase mechanical loads on the chain, pulleys, and bearings and can culminate in catastrophic internal failure.

48. Discovery will show that all Class Vehicles utilize the same or substantially similar underlying CVT design and architecture across the VT40 and TR690 families, including common internal components that render the CVT Defect common across models regardless of trim level.

49. The TSB and bulletin guidance provided to dealers has not corrected the underlying CVT Defect. Owners continue to experience internal transmission failures, slipping, loss of forward gear, and, in some cases, complete loss of motive power, despite prior service visits.

50. Despite these continued failures, GM has not implemented a permanent transmission repair that addresses the root cause. Instead, affected consumers have been left with defective vehicles that remain unsafe to operate. GM's failure to implement an effective fix underscores its ongoing unwillingness to fully address the CVT Defect, placing consumers at continued risk of safety hazards. Indeed, GM has confirmed that it will abandon the CVT altogether in the Model Year 2027 Chevrolet Equinox in favor of a conventional eight-speed automatic transmission, with the GMC Terrain expected to follow—developments widely reported as driven by consumer dissatisfaction with the CVT.

51. Discovery will confirm that the CVT Defect in all Class Vehicles is caused by improperly designed and/or manufactured internal components, including clutch regulator valve

sticking, drive-chain and pulley damage, bearing damage, and transmission-case porosity. Manufacturer communications, TSBs, preliminary information bulletins, and field reports identify these conditions, which promote slipping, loss of forward gear, and transmission failure.

52. The CVT Defect is inherent in, and the same for, all Class Vehicles. Regardless of TSB-mandated repairs and procedures, the same underlying issues persist, making it impossible for GM to effectively repair affected vehicles without a substantial redesign of the CVT and associated components.

53. Discovery will show that GM was aware of material facts regarding the CVT Defect but failed to disclose them to consumers. Internal documents, dealership service reports, and consumer complaints submitted to regulatory agencies will confirm that GM had knowledge of the defect well before Plaintiff's and Class Members' purchases and/or leases. As a result of this failure, Plaintiff and Class Members have been damaged.

**The CVT Defect Poses an Unreasonable Safety Hazard**

54. The CVT Defect poses an unreasonable safety hazard. The Defect causes sudden loss of motive power and the inability to accelerate at highway speeds, and may cause the vehicle to slip out of gear or stall, creating an immediate risk of collision and injury.

55. Federal law requires automakers like GM to be in close contact with NHTSA regarding potential auto defects, including imposing a legal requirement (backed by criminal penalties) compelling the confidential disclosure of defects and related data by automakers to NHTSA, including field reports, customer complaints, and warranty data. *See TREAD Act*, Pub. L. No. 106-414, 114 Stat. 1800 (2000).

56. Automakers have a legal obligation to identify and report emerging safety-related defects to NHTSA under the Early Warning Report requirements. *Id*. Similarly, automakers monitor NHTSA databases for consumer complaints regarding their automobiles as part of their ongoing obligation to identify potential defects in their vehicles, including those which are safety related. *Id*. Thus, GM knew or should have known of the many complaints about the CVT Defect logged by NHTSA's Office of Defects Investigation ("ODI"). The content, consistency, and

disproportionate number of those complaints alerted, or should have alerted, GM to the CVT Defect.

57. A query of NHTSA's ODI complaint database identified 358 CVT- or powertrain-related complaints out of 1,494 total complaints filed across the four principal Class Vehicle models: the Chevrolet Malibu (184 of 660), the Chevrolet Trailblazer (93 of 409), the Chevrolet Equinox (54 of 341), and the GMC Terrain (27 of 84). Recurring themes include transmission slipping or total loss of forward gear; shuddering and juddering under acceleration; DTC P2714, often intermittent and not reproducible by the dealer; and vehicles towed after complete drivetrain failure with no prior warning light.

58. With respect solely to the Class Vehicles, the following are but a few examples of the many complaints concerning the CVT Defect which are available through NHTSA's website, www.nhtsa.gov. Many of the complaints reveal that GM, through its network of dealers and repair technicians, has been made aware of the CVT Defect. In addition, the complaints indicate that despite having knowledge of the CVT Defect, GM often refused to diagnose the defect or otherwise attempt to repair it while Class Vehicles were still under warranty.

***2019 Chevrolet Malibu***

May 2, 2025 NHTSA ID NUMBER: 11658353
Components: POWER TRAIN
NHTSA ID Number: 11658353
Summary of Complaint
The clutch solenoid started failing without warning or notice. This was finally confirmed by a transmission shop after a warning lamp related to the issue finally popped up after months of issues. My safety was put at risk due to the sudden and intermittent failure to shift into drive. This would sometimes lead to the engine stuttering then shutting off while still in drive. . . . It would cause my vehicle to 'stall out' in an active lane of traffic. This issue occurs from probably 60,000–90,000 miles when the system finally threw P0700 and P2714 codes to point to the issue.

March 18, 2026 NHTSA ID NUMBER: 11725206
Components: POWER TRAIN
NHTSA ID Number: 11725206
Summary of Complaint
Year 2019, code P1101—vehicle hesitates while in drive, will reduce power while driving. . . . Multiple times while driving on the highway at 70 mph my car has all of a sudden either reduced power, causing the car to jerk and shudder very hard, or has lost all power completely and forced me to pull over while avoiding other

drivers on the road. . . . I'm scared to even drive 10 miles down the road to take my children to daycare/school because of how bad it is.

June 30, 2025 NHTSA ID NUMBER: 11670197
Components: POWER TRAIN
NHTSA ID Number: 11670197
Summary of Complaint
The contact owns a 2019 Chevrolet Malibu. The contact stated while driving or while the vehicle was parked, the gear shifter failed to shift into drive. The contact had to shift into neutral, depress the accelerator pedal, and the vehicle responded as intended. . . . The vehicle was taken to the dealer, where it was diagnosed and determined that the transmission needed to be replaced. The vehicle was not repaired. The manufacturer was notified of the failure but offered no assistance.

July 27, 2024 NHTSA ID NUMBER: 11604881
Components: POWER TRAIN
NHTSA ID Number: 11604881
Summary of Complaint
Car will stop moving forward or reverse randomly while driving. This throws a P2714 code with the check engine light. . . . Vehicle stalls out and does not move, which could cause severe accident and bodily injury. This issue seems to be a known issue among GM vehicles with . . . CVT transmissions.

September 6, 2023 NHTSA ID NUMBER: 11543019
Components: POWER TRAIN
NHTSA ID Number: 11543019
Summary of Complaint
CVT transmission is already bad on this vehicle with only 114,000 miles on it, and it's a safety hazard. And the expense to replace it costs $3,500 and up for rebuilt and $7,500 for brand new!!!! . . . I was told by several mechanics that this car and these transmissions are junk and have a bad reputation. There needs to be a recall.

September 27, 2021 NHTSA ID NUMBER: 11434595
Components: POWER TRAIN
NHTSA ID Number: 11434595
Summary of Complaint
I bought this 2019 Chevy Malibu with 40,000 miles on it; the second day I had it, the transmission completely lost power and would not accelerate . . . it takes about 5 . . . seconds for it to get power and move. This has happened pretty much every day . . . it has put me and my family's lives in danger so many times. . . . They said there is definitely a problem with the CVT transmission in the car, but sadly there is nothing they can do until Chevrolet puts out a recall. . . . This needs to be fixed immediately; it's putting people's lives in danger.

***2020 Chevrolet Malibu***
July 9, 2026 NHTSA ID NUMBER: 11749433
Components: POWER TRAIN
NHTSA ID Number: 11749433

Summary of Complaint
While attempting to enter a high-speed expressway, the transmission malfunctioned, preventing normal acceleration. The vehicle could only accelerate very slowly but managed to maintain a limited speed, creating a hazardous situation while trying to merge into fast-moving traffic. I was able to navigate the vehicle off the expressway, at which point the transmission completely failed and the vehicle died. The vehicle was towed to an authorized dealership service center, where technicians diagnosed a total internal failure of the CVT transmission requiring complete replacement. . . . [T]his is the second time the transmission on this vehicle has suffered a total failure and required a complete replacement. Prior to this mechanical breakdown, there were no warning lights, abnormal symptoms, or performance issues indicating an impending transmission failure.

December 11, 2024 NHTSA ID NUMBER: 11630078
Components: POWER TRAIN
NHTSA ID Number: 11630078
Summary of Complaint
Trouble going into forward gears. Hard shifts into reverse. Hard idle, had transmission valve body replaced in October. Same issues before and after replacement.

December 19, 2025 NHTSA ID NUMBER: 11706146
Components: POWER TRAIN
NHTSA ID Number: 11706146
Summary of Complaint
This is a 2020 Malibu with only 18,000 miles on it now. We are having intermittent loss of power. Car will be moving fine when suddenly it loses power when pulling into traffic from a stop. It has also happened on the highway . . . all of a sudden power drops and rpms go up and car slows up. . . . It is back at the dealer now. . . . They fixed a shift-to-park issue but cannot duplicate the loss of power. . . . This car is very scary to be in, [given] the way this happens and when it is happening.

November 18, 2025 NHTSA ID NUMBER: 11700027
Components: POWER TRAIN
NHTSA ID Number: 11700027
Summary of Complaint
The contact owns a 2020 Chevrolet Malibu. The contact stated that while driving at various speeds, the vehicle lost motive power and failed to accelerate while depressing the accelerator pedal properly. The vehicle was taken to the local dealer, who discovered metal debris inside the transmission and advised the contact that the transmission needed to be replaced. The vehicle was not yet repaired. The manufacturer was notified of the failure. The failure mileage was 106,000.

August 23, 2024 NHTSA ID NUMBER: 11610353
Components: POWER TRAIN
NHTSA ID Number: 11610353
Summary of Complaint

I was driving down the road and the car started slowing down, and even when I would give it gas[,] wouldn't accelerate. . . . I tried to pull back out into traffic and the car would not engage into gear. When giving the car gas[,] it didn't move. . . . [T]he car shifted very hard into drive and began accelerating. Now[,] every time it stalls out . . . or decelerates while driving down the road[,] [it makes] me fearful for my life due to being hit from behind[,] [with] no notice or warning before the car decelerates.

June 16, 2022 NHTSA ID NUMBER: 11469643
Components: POWER TRAIN
NHTSA ID Number: 11469643
Summary of Complaint
The contact owns a 2020 Chevrolet Malibu. The contact stated that while driving at various speeds, the vehicle would intermittently hesitate and stall with the traction control and check engine warning lights illuminated. Once the vehicle stalled, the contact had to wait a few minutes before successfully restarting the vehicle. The vehicle had been taken to the dealer on multiple occasions; however, the mechanic was unable to duplicate or determine the cause of the failure. . . . [T]he failure persisted after each repair.

***2021 Chevrolet Malibu***
April 10, 2026 NHTSA ID NUMBER: 11730300
Components: POWER TRAIN
NHTSA ID Number: 11730300
Summary of Complaint
My car stalls, jerks, and shuts off when in drive. . . . I press on the gas and nothing. Car doesn't move. . . . [M]ost of the time it'll jerk while I tap on the gas, then make a big stutter like power is low . . . then it makes a huge jerk before it goes into drive. This has become an everyday thing. . . . When looking up common potential recalls, my car checks almost every box that was stated online.

October 16, 2025 NHTSA ID NUMBER: 11693964
Components: POWER TRAIN
NHTSA ID Number: 11693964
Summary of Complaint
The contact owns a 2021 Chevrolet Malibu. The contact stated that while driving . . . and attempting to accelerate after a stop, the vehicle failed to accelerate as intended while depressing the accelerator pedal. In addition, the transmission unexpectedly downshifted before slamming into gear, . . . violently push[ing] [the contact] into the back of the seat. . . . The vehicle was taken to several dealers; however, the dealers were unable to replicate the failure. The solenoid valve was replaced on the vehicle; however, the failure persisted.

April 29, 2024 NHTSA ID NUMBER: 11585982
Components: POWER TRAIN
NHTSA ID Number: 11585982
Summary of Complaint
Had the car for less than a year, and it started jerking badly on the highway, almost caus[ing] an accident. Took it to the Chevy dealer and was told I need a new

transmission on a 2021 vehicle because of a stretched drive chain, causing weak drive and [causing] metal debris to get sent through the transmission, setting DTCs.

***2022 Chevrolet Malibu***
April 27, 2023 NHTSA ID NUMBER: 11519329
Components: POWER TRAIN
NHTSA ID Number: 11519329
Summary of Complaint
My transmission is jerking and slipping. When accelerating, the car acts like it doesn't want to go. When I take my foot off the gas pedal, the transmission jerks hard. The car has had the original transmission replaced by the dealer, and now the new transmission is having the same issue. The car never had any check engine lights or any lights come on.

***2024 Chevrolet Malibu***
June 6, 2026 NHTSA ID NUMBER: 11742441
Components: POWER TRAIN
NHTSA ID Number: 11742441
Summary of Complaint
My 2024 Chevy Malibu has lost power and is not shifting properly yet it's not displaying any codes. It shifts and jerks very hard when on a cold start but also will not get up and go when I pull into traffic. This has caused me to almost get hit numerous times. It's like it freezes and won't go! The dealership could not recreate the problem (shocker), and since no codes they sent me away. . . . I purchased this vehicle used at 40k miles and my power train warranty will expire in less than 5k miles yet I can't get any help with making it safe.

***2021 Chevrolet Trailblazer***
February 28, 2025 NHTSA ID NUMBER: 11645476
Components: POWER TRAIN
NHTSA ID Number: 11645476
Summary of Complaint
Engine power reduced came on after I was driving from a patient's home. My car started driving very rough. I had to pull over because I was in danger of being hit from behind. I took my car to a mechanic and was diagnosed with the code DTC P2714. . . . Chevy knows about the issue and has not issued any recalls. Unfortunately for me my vehicle is past the limited warranty so now I have to save up money to get my transmission serviced. I could've been really hurt when my engine cut off.

July 23, 2026 NHTSA ID NUMBER: 11752367
Components: POWER TRAIN
NHTSA ID Number: 11752367
Summary of Complaint
My trailblazer will not shift properly into drive from park or reverse. GM calls this a 'loss of forward motion' or 'delayed forward engagement' in their service bulletin

TSB-24-NA-009. It is a safety issue because you never know when or how long the vehicle will take to engage and allow forward movement. . . . When this occurs, the vehicle engine will shutter and not allow any forward movement. . . . This generates a P2714 code. I had the car looked at by a GM dealer as well as an independent transmission repair shop and both indicate it will likely need a new transmission. GM is fully aware of the defect and has issued a service bulletin, TSB-24-NA-009 . . . . It is my understanding, GM has since abandoned this transmission on the newer models, further indicating that GM knew these transmissions were not designed well.

July 16, 2026 NHTSA ID NUMBER: 11750836
Components: POWER TRAIN
NHTSA ID Number: 11750836
Summary of Complaint
Vehicle has 67,000 miles and suffered a catastrophic CVT transmission failure, documented by dealership diagnostic code P2714. The transmission severely slips and exhibits a dangerous 15-second delay to engage forward gear after shifting into Drive. More critically, the vehicle suffers from unpredictable engine stalling. The car completely shut down and stalled in traffic while trying to accelerate into a driving lane after shifting. The vehicle did not trigger any dashboard safety warnings, limp mode, or 'Reduced Engine Power' messages prior to shutting down, causing an un-warned loss of motive power on a public road. . . . General Motors has acknowledged internal CVT chain slippage and hydraulic failure points in Technical Service Bulletins 24-NA-009 and PIP6033 but has not issued a safety recall.

April 29, 2026 NHTSA ID NUMBER: 11734472
Components: POWER TRAIN
NHTSA ID Number: 11734472
Summary of Complaint
I am reporting a serious safety issue with my 2021 Chevrolet Trailblazer related to transmission failure. . . . While driving, the vehicle experiences a sudden loss of power when attempting to accelerate. In some instances, the vehicle has stalled or shut off while I was actively driving, creating a dangerous situation, especially when merging into traffic or driving through intersections. . . . [T]here is a noticeable delay or complete lack of power. . . . Diagnostic codes associated with this issue include P2714 and P0700 . . . . I have been advised that the vehicle requires a full transmission replacement.

***2023 Chevrolet Trailblazer***
October 30, 2023 NHTSA ID NUMBER: 11552709
Components: POWER TRAIN
NHTSA ID Number: 11552709
Summary of Complaint
Repeat issues with the transmission, ongoing [for] about two months. . . . [T]he vehicle [was] not shifting in drive or reverse . . . . The issue persists . . . in reverse, where I will put it in gear, but it will rev without moving, as if the vehicle is in neutral. The dealership has replaced the valve body three times and is now awaiting other parts to attempt to resolve the issue.

August 29, 2023 NHTSA ID NUMBER: 11541336
Components: POWER TRAIN
NHTSA ID Number: 11541336
Summary of Complaint
Vehicle will not shift when needed, or suddenly shift[s] when it shouldn't, . . . causing a lurching motion of the car. Then, the vehicle would not be able to be put into reverse. Appears to be a transmission issue.

February 23, 2023 NHTSA ID NUMBER: 11508665
Components: POWER TRAIN
NHTSA ID Number: 11508665
Summary of Complaint
I have noticed that when it's very cold, the vehicle will not shift to the two highest gears . . . until 20+ minutes into my trip. . . . This morning, 20+ minutes into my trip, I was going 71 mph while running 4,000 rpms, and it wouldn't shift. The temperature outside was 1 degree. The same thing was happening when it was cold in December.

***2024 Chevrolet Trailblazer***
February 27, 2026 NHTSA ID NUMBER: 11721070
Components: POWER TRAIN
NHTSA ID Number: 11721070
Summary of Complaint
The 2024 Trailblazer developed a problem going into reverse at less than 17,500 miles in December of 2025 . . . . It would slam into reverse or freeze and then shift harshly. The selling dealer replaced the valve body in the transmission . . . . After I delivered the car back to my daughter . . . the transmission continued to freeze and slam into reverse. The selling dealer advised not to drive it . . . . The servicing dealer said they could not duplicate the situation and returned the car after 9 days. . . . [T]he transmission has continued to act up in reverse with freezing and slam[m]ing while trying to reverse in real world settings.

July 17, 2025 NHTSA ID NUMBER: 11674317
Components: POWER TRAIN
NHTSA ID Number: 11674317
Summary of Complaint
When shifting from park to drive after the engine start none of the gears on the shifter engage. All positions are in neutral except for park. . . . the engine revs when the throttle is pressed but the vehicle will immediately roll whichever way the ground is inclined. The power brakes won’t engage . . . . A fix for this issue is described in General Motors Service update N2424466290 which identifies solution as replacement of the clutch piston housing. The Dealer will not fix the problem because my VIN # was not on their list of vehicles to fix. . . . [T]he car suddenly rolled into a lane of traffic backwards in a Costco parking lot.

***2025 Chevrolet Trailblazer***
July 4, 2026 NHTSA ID NUMBER: 11748264

Components: POWER TRAIN
NHTSA ID Number: 11748264
Summary of Complaint
The vehicle is experiencing a severe, intermittent, and violent mechanical "garage shift" engagement lurch. This occurs specifically when shifting the gear selector from Reverse to Drive during a cold-start cycle. . . . [T]here is a distinct hydraulic delay followed by a violent mechanical slam that causes the entire vehicle to . . . lurch forward, . . . even though the engine has . . . idled down . . . below 1,000 RPM, and while the brake pedal is fully and firmly depressed. . . . General Motors' internal service bulletins (such as Bulletin 24-NA-009) indicate known issues with sticking clutch regulator valves or solenoid over-travel causing line pressure spikes in these . . . transmissions, yet no safety recall has been issued.

November 2, 2024 NHTSA ID NUMBER: 11623243
Components: POWER TRAIN
NHTSA ID Number: 11623243
Summary of Complaint
Vehicle would not go over 20 mph at times. When the vehicle would shift from 2nd to 3rd gear, the engine would race, yet not engage.

***<u>2024 Chevrolet Equinox</u>***
June 1, 2025 NHTSA ID NUMBER: 11664188
Components: POWER TRAIN
NHTSA ID Number: 11664188
Summary of Complaint
The transmission would not engage in any gear while I was in the path of oncoming traffic.

June 3, 2026 NHTSA ID NUMBER: 11741897
Components: POWER TRAIN
NHTSA ID Number: 11741897
Summary of Complaint
While driving the vehicle it would just shut off; when you tried to restart the vehicle it would not start, all you could smell was gas. This happened on 3 different occasions [and was confirmed] by 3 different Chevrolet dealerships. . . . [T]here were no lights or warnings; only after it turned off we would receive a reduced engine power notice on the dash but no warning lights.

November 21, 2025 NHTSA ID NUMBER: 11700867
Components: POWER TRAIN
NHTSA ID Number: 11700867
Summary of Complaint
My 2024 Equinox was returned to the dealership . . . due to a check engine light related to the transmission. . . . My safety and the safety of my grandchildren were put at risk: loss of power and control, stalling, inability to accelerate in traffic, gear slippage, and overheating. Given the known history of transmission issues in the

Equinox . . . it is disheartening that GM continues to sell vehicles at premium prices while failing to properly support the customers who purchase them.

***2025 Chevrolet Equinox***

February 21, 2026 NHTSA ID NUMBER: 11719618
Components: POWER TRAIN
NHTSA ID Number: 11719618
Summary of Complaint
Was told bad fluid pump at 35k. Replaced. Car broke down 30 seconds from dealer. New transmission to be replaced now. Parts on backorder. Will be without car for 'months'. No symptoms prior to failure. No warning lights. Car just wouldn't start.

September 8, 2025 NHTSA ID NUMBER: 11685773
Components: POWER TRAIN
NHTSA ID Number: 11685773
Summary of Complaint
Vehicle rolls back very often when in drive. Even holding down the brake at a hill, then hitting the accelerator, it still rolls back. . . . Overall harsh riding. Feels like it's all coming from that CVT. Dealer says that it may be an issue but can't replicate it unless it stays there with them for a while until they can replicate the issue. There have been incidents where I've almost rolled back and hit other vehicles due to this.

June 27, 2025 NHTSA ID NUMBER: 11669810
Components: POWER TRAIN
NHTSA ID Number: 11669810
Summary of Complaint
The contact owns a 2025 Chevrolet Equinox. The contact stated that upon attempting to park, or . . . shift into reverse, neutral, or . . . drive, the shifter becomes extremely difficult to put into gear, and a message . . . display[ed] . . . "Conditions not correct for shift." . . . The vehicle was taken to a local dealer, where . . . the contact was advised that the valve body . . . would need to be replaced. The vehicle was repaired; however, the failure persisted. The contact noted that this is the second occurrence of their vehicle needing to have the valve body replaced.

May 27, 2025 NHTSA ID NUMBER: 11663111
Components: POWER TRAIN
NHTSA ID Number: 11663111
Summary of Complaint
The contact owns a 2025 Chevrolet Equinox. The contact stated[,] while reversing . . . the vehicle shuddered and stalled. The contact stated that the failure had occurred on several occasions. . . . The vehicle was taken to a dealer to be diagnosed, and . . . the transmission needed to be replaced. The vehicle was not repaired.

***2026 Chevrolet Equinox***

October 27, 2025 NHTSA ID NUMBER: 11695776
Components: POWER TRAIN
NHTSA ID Number: 11695776
Summary of Complaint
[T]he transmission slipped . . . while driving. It felt like it went into neutral and then back into gear. The dealer looked at it and could not find anything wrong. It was . . . fine for a few weeks, and then it did it again.

***2024 GMC Terrain***

March 4, 2026 NHTSA ID NUMBER: 11722117
Components: POWER TRAIN
NHTSA ID Number: 11722117
Summary of Complaint
Since [purchase] my car keeps derating and reducing engine power while driving down the road at 70 miles an hour. It cuts out and decreases power. . . . Since December my car has done this decreased power, derated notice more than 30 times!! It is a safety risk for me and my family because you never know when it will happen on the interstate. . . . I have almost been rear-ended 3 times due to this issue and no one can seem to fix the issue.

September 12, 2024 NHTSA ID NUMBER: 11614243
Components: POWER TRAIN
NHTSA ID Number: 11614243
Summary of Complaint
We purchased our 2024 GMC Terrain in April 2024, and two months later . . . I noticed a weird transmission shift or slip, and then the vehicle's rpms increased suddenly. . . . I attempted to put the vehicle in reverse; the reverse indicator lit up and just began to blink . . . but the transmission did not go into reverse. . . . [T]he car was towed to the . . . GMC dealership. The original diagnosis was that the TCM was bad . . . . The TCM was replaced but did not resolve the issue. . . . GM released a bulletin regarding a bad snap ring condition. The service dealer tore down the transmission and determined the snap ring was bad, and . . . the clutch was severely burned and needed to be replaced, along with both valve bodies. . . . [F]ive days . . . later, the vehicle began to behave the same way and had to be returned to the dealer. . . . [W]e requested that GM buy the vehicle back from us, which they . . . declined.

May 15, 2024 NHTSA ID NUMBER: 11588928
Components: POWER TRAIN
NHTSA ID Number: 11588928
Summary of Complaint
My spouse was driving her new 2024 GMC Terrain . . . [when] suddenly the car stopped[.] . . . The vehicle was . . . taken to the dealer's service center . . . . The diagnosis was determined to be a defective . . . transmission valve body. In discussion with the dealer service manager, he indicated this is a common

occurrence with the valve body. . . . [T]his defect can be fatal, especially during inclement weather, fast speeds, [or on] winding, narrow mountain roads.

***2025 GMC Terrain***

August 20, 2025 NHTSA ID NUMBER: 11681792
Components: POWER TRAIN
NHTSA ID Number: 11681792
Summary of Complaint
Incident 1: Pulled out from stop sign, car made funny noises, light came on, said it couldn't shift to drive. Had it towed to dealer. They said [they] couldn't find [an] issue except it was a quart and a half low of transmission fluid. The car had approx[imately] 3,500 miles on it. Incident 2: For about two weeks when pulling out [it] felt like it was skipping . . . . Pulled out, made noise, would not move. . . . They then said it was very low on transmission fluid and they did find a small hole in [a] hose. [The] danger is pulling out and it just stops in cross traffic and won't move — [it] could easily be hit.

January 6, 2026 NHTSA ID NUMBER: 11709231
Components: POWER TRAIN
NHTSA ID Number: 11709231
Summary of Complaint
Leaking either transmission fluid or oil . . . . Car is not shifting correctly when driving.

***2026 GMC Terrain***

May 12, 2026 NHTSA ID NUMBER: 11737215
Components: POWER TRAIN
NHTSA ID Number: 11737215
Summary of Complaint
The car has always had an issue where it would just get stuck in a low gear and the RPMs would go high. It does this every single day. . . . [R]ecently[,] it also started acting like it was put into neutral for a few seconds and then back into drive.

59. Additional CVT- and powertrain-related complaints submitted to NHTSA regarding the Class Vehicles, not reproduced above, are compiled at Exhibit B.

60. Consumer complaints regarding the CVT Defect are not limited to those submitted to NHTSA. Owners of the Class Vehicles have documented the same or substantially similar CVT problems—including slipping, shudder, hesitation, and early-life CVT failure, together with dealership difficulty reproducing the condition for warranty repair—in public owner forums and consumer-complaint compilations concerning the Chevrolet Malibu, Chevrolet Trailblazer, GMC Terrain, and Chevrolet Equinox.

**Customer Complaints on Third-Party Websites**

61. Similarly, complaints and reports posted by consumers and industry publications on third-party websites demonstrate that the CVT Defect is widespread and dangerous, that it can manifest without warning and without a suitable repair, and that GM is aware of it. The following are a sample of such consumer complaints and reports (spelling and grammar remain as found in the original):

62. On the Chevrolet Malibu Forums, owners of VT40 CVT-equipped vehicles report the very condition described in GM's Service Bulletin 24-NA-009—loss of forward gear, slipping, and diagnostic trouble code P2714 caused by a sticking clutch regulator valve—together with repeated dealership difficulty replicating the fault for warranty repair.[1]

63. On the Chevrolet Malibu Forums, an owner of a 2019 Chevrolet Malibu with roughly 93,000 miles reported that the vehicle had "intermittently exhibited symptoms of a stuck open clutch regulator valve, very infrequently creating the codes P0700 . . . and p2714." The owner explained that "[a]t cold start . . . if I shift down to drive, the car will hesitate and not move forward," and that shifting back to Reverse and then down to Drive again would resolve the issue "every time." (Post dated July 2, 2025.)[2]

64. In the same forum, an owner of a 2019 Chevrolet Malibu with roughly 85,000 miles reported that after the dealership "[r]eplaced both valve body's," the vehicle still had "no forward gear but do have reverse," and asked whether the transmission itself would need to be replaced. (Post dated Oct. 25, 2023.)[3]

---

[1] See, e.g., "P2714 CVT Clutch Regulator Valve Stuck Open," https://www.chevymalibuforum.com/threads/p2714-cvt-clutch-regulator-valve-stuck-open.129053/; "2019 Malibu VT40 CVT code P2714," https://www.chevymalibuforum.com/threads/2019-malibu-vt40-cvt-code-p2714.125740 (last visited: Aug. 18, 2026); /.

[2] See *P2714 CVT Clutch Regulator Valve Stuck Open*, Chevrolet Malibu Forums (July 2, 2025), https://www.chevymalibuforum.com/threads/p2714-cvt-clutch-regulator-valve-stuck-open.129053/ (last visited Aug. 18, 2026).

[3] See *2019 Malibu VT40 CVT Code P2714*, Chevrolet Malibu Forums (Oct. 25, 2023), https://www.chevymalibuforum.com/threads/2019-malibu-vt40-cvt-code-p2714.125740/ (last visited Aug. 18, 2026).

65. On Trailblazer Talk, owners of 2021-2024 Chevrolet Trailblazers report CVT shudder, hesitation, and slipping under light throttle, consistent with the conditions addressed in GM's bulletins.[4]

66. On Trailblazer Talk, an owner of a 2021 Chevrolet Trailblazer Activ FWD with 13,500 miles reported "hearing a sound like a bad wheel bearing," which the dealership traced to the transmission, explaining that the vehicle "runs fine[,] just makes the noise," but that "they don't work on CVT transmissions and it will be replaced." (Post dated Mar. 24, 2023.)[5]

67. On the GMC Terrain, Equinox, and SRX Forum, owners of the redesigned Chevrolet Equinox and GMC Terrain report transmission failures within months of purchase.

68. On the GMC Terrain, Equinox, and SRX Forum, an owner of a 2024 GMC Terrain with roughly 11,700 miles reported that the vehicle "would not shift" while driving, forcing the owner to have it towed to the dealership; the dealership diagnosed an internal transmission component failure and performed a repair under warranty. (Post dated Nov. 5, 2024.)[6]

69. In the same forum, an owner of a 2025 Chevrolet Equinox with only 1,300 miles reported that after "there was a thump and it wouldn't move," the vehicle displayed a "service transmission" warning and would only "rev[] up" without moving when put in drive, and that the dealership could not look at the vehicle "until Wednesday" and had no loaner available on short notice. (Post dated Jan. 13, 2025.)[7]

---

[4] See "Transmission Troubles," https://www.trailblazertalk.com/threads/transmission-troubles.1220/(last visited: Aug 18, 2026);.

[5] See *Transmission Troubles*, Trailblazer Forum (Mar. 24, 2023), https://www.trailblazertalk.com/threads/transmission-troubles.1220/ (last visited Aug. 18, 2026).

[6] See *Transmission Problem in 2024 Terrain That Is Only 6 Months Old*, GMC Terrain, Equinox, and SRX Forum (Nov. 5, 2024), https://www.terrainforum.net/threads/transmission-problem-in-2024-terrain-that-is-only-6-months-old.34676/ (last visited Aug. 18, 2026).

[7] See *New 25 Equinox Won't Move*, GMC Terrain, Equinox, and SRX Forum (Jan. 13, 2025), https://www.terrainforum.net/threads/new-25-equinox-wont-move.34825/ (last visited Aug. 18, 2026).

70. LemonAuto.com maintains a compilation of GM transmission complaints spanning the 2018–2026 model years, including CVT-specific complaints for the Chevrolet Equinox, GMC Terrain, Chevrolet Trailblazer, and Chevrolet Malibu.[8]

71. Lemon law practitioners have likewise identified the CVT as an emerging reliability concern in the redesigned platform. Valero Law, APC, a California lemon law firm, published guidance in August 2024 advising owners of the 2025 Chevrolet Equinox that its CVT can produce a "rubber band" effect in which "[a]cceleration feels sluggish or delayed," along with "inconsistent power delivery" and "jerky movements," and recommended that owners document these symptoms for potential lemon law claims.[9]

72. Industry publications have likewise reported on the CVT Defect and on GM's knowledge of it. GM Authority, reporting on GM's Service Bulletin 24-NA-009, explained the reason "your Chevy Malibu or Chevy Trailblazer transmission lost forward gear or slips"—namely, a sticking clutch regulator valve in the VT40 CVT that sets DTC P2714 and can damage the forward clutch piston, primary pulley bearing bore, and transmission case.[10]

73. Automotive press outlets have further reported that GM is discontinuing the CVT in its best-selling crossover in favor of a conventional automatic transmission amid consumer dissatisfaction. See "Chevrolet Is Killing The Unloved CVT In Its Most Popular SUV."[11] /.

**GM Had Superior and Exclusive Knowledge of the CVT Defect**

74. GM had superior and exclusive knowledge of the CVT Defect and knew or should have known that the defect was not known or reasonably discoverable by Plaintiff and Class Members before they purchased or leased the Class Vehicles.

---

[8] See https://www.lemonauto.com/gm-transmission-problems.html. (last visited: Aug. 18, 2026);.

[9] See Joshua Valero, *Understanding the Potential Lemon Law Issues with the 2025 Chevrolet Equinox's CVT Transmission*, Valero Law, APC (Aug. 29, 2024), https://www.valerolaw.com/news/2024/8/29/understanding-the-potential-lemon-law-issues-with-the-2025-chevrolet-equinoxs-cvt-transmission (last visited Aug. 17, 2026).

[10] See https://gmauthority.com/blog/2024/06/here-may-be-why-your-chevy-malibu-or-chevy-trailblazer-transmission-lost-forward-gear-or-slips/.(last visited: Aug 18, 2026);.

[11] See Tom Murphy, *Chevrolet Is Killing The Unloved CVT In Its Most Popular SUV*, CarBuzz (Mar. 31, 2026), https://carbuzz.com/chevrolet-is-killing-its-unloved-cvt-in-one-popular-crossover (last visited Aug. 18, 2026).

75. Discovery will show that before Plaintiff purchased his Class Vehicle, and since at least 2021, GM knew about the CVT Defect through sources not available to consumers, including pre-release testing data, early consumer complaints to GM and its dealers who are its agents for vehicle repairs, consumer complaints regarding earlier model years equipped with the same or substantially similar CVT, testing conducted in response to those complaints, high failure rates and replacement part sales data, consumer complaints to NHTSA (which GM monitors), the development of Technical Service Bulletins and Preliminary Information bulletins in an effort to address the CVT Defect, and other aggregate data from GM dealers about the problem.

76. GM is experienced in the design and manufacture of consumer vehicles. As an experienced manufacturer, GM conducts tests, including pre-sale durability testing, on incoming components, including the CVT, to verify the parts are free from defect and align with GM's specifications. Thus, GM knew or should have known the CVT was defective and prone to put drivers in a dangerous position due to the inherent risks of the CVT Defect.

77. Additionally, discovery will show that GM knew of the impact of this defect from the sheer number of reports received from dealerships. GM's customer relations department, which interacts with individual dealerships to identify potential common defects, has received numerous reports regarding the Defect, which led to repeated internal communications, Technical Service Bulletins, Preliminary Information bulletins, and Customer Satisfaction Programs addressing CVT slipping, judder, and loss of forward gear. GM's customer relations department also collects and analyzes field data including, but not limited to, repair requests made at dealerships, technical reports prepared by engineers who have reviewed vehicles for which warranty coverage is being requested, parts sales reports, and warranty claims data.

78. Defendant's warranty department similarly analyzes and collects data submitted by its dealerships to identify warranty trends in its vehicles. It is Defendant's policy that when a repair is made under warranty the dealership must provide GM with detailed documentation of the problem and a complete disclosure of the repairs employed to correct it. Dealerships have an incentive to provide detailed information to Defendant because they will not be reimbursed for any repairs unless the justification for reimbursement is sufficiently detailed.

79. Well before the first Class Vehicle was sold, GM knew or should have known that the CVTs were defective in design and manufacture and that the defect would adversely affect drivability and safety. GM deployed CVTs across a substantial portion of its passenger car and crossover lineup, including the Chevrolet Malibu, Chevrolet Trailblazer, Buick Encore GX, Chevrolet Equinox, and GMC Terrain, and the VT40 (RPO MRG) and TR690 CVTs share common valve-body, clutch, drive-chain, pulley (sheave), bearing, and case-casting architecture. Pre-production validation, field testing, warranty data, and internal engineering reviews revealed clutch regulator valve sticking, chain and pulley wear, bearing damage, and loss of forward gear.

80. GM's own service communications corroborate the foregoing and show knowledge of CVT slipping, judder, and loss of forward gear in the Class Vehicles' CVTs, including:

(a) Service Bulletin 24-NA-009 (2024; revised 2025): Applicable to 2019–2025 Chevrolet Malibu and 2021–2025 Chevrolet Trailblazer FWD vehicles equipped with the VT40 CVT (RPO MRG). Acknowledges loss of forward gear and CVT slipping, with the malfunction indicator light illuminated and DTC P2714 (Transmission Control Solenoid Valve Four Stuck Off) set, and identifies the root cause as the clutch regulator valve sticking in the valve body. The bulletin warns that the sticking valve can also damage the forward clutch piston, the primary pulley bearing bore, and the transmission case, and states that the condition may be intermittent or not dealer-reproducible.

(b) Service Bulletin 16-151-24R (initial release 2024; revised through July 30, 2025): Applicable to TR690 CVT-equipped vehicles, including the Chevrolet Equinox, GMC Terrain, Chevrolet Trailblazer, and Chevrolet Malibu. Provides diagnostic guidance for chain slip, judder, shudder, and hesitation; directs technicians to consult it before any previously released material when addressing CVT drivability complaints; and includes an updated "Lockup Judder Type A" test-drive protocol. The bulletin was revised multiple times, reflecting persistent field reports.

(c) Preliminary Information Bulletin PIP6033 (December 11, 2024): Applicable to 2022–2024 Buick Encore GX, 2025 Chevrolet Equinox, 2022–2024 Chevrolet Malibu, and 2022–2024 Chevrolet Trailblazer. Addresses CVT noise, slip, or complete loss of motion; identifies

possible causes as a damaged drive chain, damage to the primary or secondary pulleys (sheaves), or bearing damage; and acknowledges the condition may occur with or without an illuminated check-engine light or stored DTC.

81. Collectively, these manufacturer communications show GM's prior knowledge of CVT slipping, judder, and loss of forward gear affecting the Class Vehicles' CVTs, as well as GM's direction to its authorized dealers toward procedures that do not correct the underlying defect. GM's subsequent decision to abandon the CVT in the 2027 Chevrolet Equinox in favor of a conventional automatic transmission further confirms GM's knowledge that the CVT was not adequately designed.

82. The existence of the CVT Defect is a material fact that a reasonable consumer would consider when deciding whether to purchase or lease a Class Vehicle. Had Plaintiff and other Class Members known of the CVT Defect, they would have paid less for the Class Vehicles or would not have purchased or leased them.

83. Reasonable consumers, like Plaintiff, expect that a vehicle's transmission is safe, will function in a manner that will not pose a safety risk, and is free from defects. Plaintiff and Class Members further reasonably expect that GM will not sell or lease vehicles with known safety defects, such as the CVT Defect, and will disclose any such defects to its consumers when it learns of them. They did not expect GM to conceal and fail to disclose the CVT Defect to them, and to then continually deny its existence.

**GM Has Actively Concealed the CVT Defect**

84. Despite its knowledge of the CVT Defect in the Class Vehicles, GM actively concealed the existence and nature of the defect from Plaintiff and Class Members. Specifically, GM failed to disclose or actively concealed at and after the time of purchase, lease, or repair:

(a) any and all known material defects or material nonconformity of the Class Vehicles, including the defects pertaining to the CVT;

(b) that the Class Vehicles, including the CVT, were not in good working order, were defective, and were not fit for their intended purposes; and

(c) that the Class Vehicles and their CVTs were defective, despite the fact that GM learned of such defects as early as 2019. This concealment occurred notwithstanding GM's internal documentation, TSBs, and PIPs acknowledging CVT slipping, judder, and loss of forward gear in the Class Vehicles.

85. Discovery will show that when consumers present their Class Vehicles to an authorized GM dealer for CVT repairs, GM's diagnostic protocols and repair guidance direct technicians to treat slipping, shudder, and loss of forward gear as intermittent, not dealer-reproducible, or normal operating characteristics. Dealers are instructed to reprogram, reseal, block-sand a porous case, or replace unrelated components rather than replace the defective transmission, thereby concealing the underlying defect. As occurred with Plaintiff's vehicle, dealers may replace unrelated components and merely "top off" transmission fluid without correcting the CVT Defect.

86. GM has caused Plaintiff and Class Members to expend money and/or time at its dealerships to diagnose, repair, or replace the Class Vehicles' CVT and/or related components, despite GM's knowledge of the CVT Defect.

**Defendant Has Unjustly Retained a Substantial Benefit**

87. Discovery will show that Defendant unlawfully failed to disclose the alleged defect to induce Plaintiff and other putative Class Members to purchase or lease the Class Vehicles.

88. Plaintiff further alleges that Defendant thus engaged in deceptive acts or practices pertaining to all transactions involving the Class Vehicles, including Plaintiff's.

89. As discussed above, therefore, Plaintiff alleges that Defendant unlawfully induced him to purchase his Class Vehicle by concealing a material fact (the defective CVT) and that he would have paid less for the Class Vehicle, or not purchased it at all, had he known of the defect.

90. Accordingly, Defendant's ill-gotten gains and benefits accrued in the form of increased sales and profits resulting from the material omissions that did—and likely will continue to—deceive consumers, should be disgorged.

## GM Authorized Dealers are Defendant's Agents

91. In promoting, selling, and repairing its defective vehicles, GM acts through numerous authorized dealers who act as, and represent themselves to the public as, exclusive GM representatives and agents. That the dealers act as GM's agents is demonstrated by the following facts:

(a) The authorized GM dealerships complete all service and repair according to GM's instructions, which GM issues to its authorized dealerships through service manuals, technical service bulletins ("TSBs"), preliminary information bulletins, technical tips ("TT"), and other documents;

(b) Technicians at GM dealerships are required to attend at least yearly GM-provided trainings in order to remain certified to work on GM-branded vehicles, at which they receive training on proprietary systems that provides guided, step-by-step instructions on diagnosing and repairing GM-branded vehicles;

(c) Consumers are able to receive services under GM's issued New Vehicle Limited Warranty ("NVLW") and Limited Powertrain Warranty ("LPW") only at GM's authorized dealerships, and they are able to receive these services because of the agreements between GM and the authorized dealers. These agreements provide GM with a significant amount of control over the actions of the authorized dealerships;

(d) The warranties provided by GM for the defective vehicles direct consumers to take their vehicles to authorized dealerships for repairs or services;

(e) GM dictates the nature and terms of the purchase contracts entered into between its authorized dealers and consumers;

(f) GM controls the way in which its authorized dealers can respond to complaints and inquiries concerning defective vehicles, and the dealerships are able to perform repairs under warranty only with GM's authorization;

(g) GM has entered into agreements and understandings with its authorized dealers pursuant to which it authorizes and exercises substantial control over the operations of its dealers and the dealers' interaction with the public, particularly the advertising; and

(h) GM implemented its express and implied warranties as they relate to the defects alleged herein by instructing authorized GM dealerships to address complaints of the Defect.

92. Indeed, GM's Chevrolet warranty booklets make it abundantly clear that GM's authorized dealerships are its agents for vehicle sales and service. The booklets, which are plainly written for the consumers, not the dealerships, tell the consumers that to obtain warranty service, "take the vehicle to an authorized Chevrolet dealership within the warranty period and request the needed repairs."

93. Accordingly, as the above paragraphs demonstrate, the authorized dealerships are agents of GM. Plaintiff and each of the members of the Class have had sufficient direct dealings with either GM or its agent dealerships to establish privity of contract between GM, on one hand, and Plaintiff and each of the members of the Class, on the other hand. This establishes privity with respect to the express and implied warranties between Plaintiff and GM. It also establishes that Plaintiff was dealing with GM through its authorized agent dealerships when he was given the NVLW and LPW associated with his vehicle, without any ability to negotiate the terms of such warranties.

**Defendant's Warranties Were Unconscionable**

94. Plaintiff signed a contract for sale with a GM authorized dealer, and with that sale was presented with the terms of the Warranty as drafted by GM. While Plaintiff had some ability to negotiate the price of the vehicle, he had no ability to negotiate the terms of the Warranty. Plaintiff had no bargaining power with respect to the Warranty, was presented with it as a fait accompli, and had to accept it in the exact form in which it was presented to him, which occurred after the vehicle purchase transaction was completed. Plaintiff had no meaningful choice regarding any aspect of the Warranty or its terms, including durational limitations of time and mileage. The terms of the Warranty unreasonably favored Defendant over Plaintiff and the members of the Class; a gross disparity in bargaining power existed as between Defendant and Class Members; and Defendant knew or should have known that the CVT Defect would manifest in the Class Vehicles both before and after the Warranty, thereby rendering the time and mileage limitations insufficient, inadequate, and unconscionable.

95. GM drafted the terms of the Warranty in part by using its exclusive, superior knowledge of the existence and likely manifestation of the Defect. Plaintiff and Class Members were entirely ignorant of the Defect when purchasing their Vehicles and when presented with the Warranty. Plaintiff's acceptance of the Warranty and its terms, including any disclaimers or durational limits, was neither knowing nor voluntary. Defendant knew or should have known at the time of sale that the Class Vehicles were defective and would fail prematurely solely because of a defect in design, materials, and workmanship—namely, the CVT Defect. Plaintiff and Class Members, on the other hand, had no notice of or ability to detect the Defect prior to purchasing the Class Vehicles. For this reason, the terms of the Warranty unreasonably favored Defendant over Plaintiff and Class Members, and Plaintiff's and Class Members' acceptance of the Warranty's durational limitations, to the extent they are found to apply so as to exclude instances where the Defect manifested outside of them, was neither knowing nor voluntary, thereby rendering such limitation unconscionable and ineffective.

96. Plaintiff was also not aware and could not have been aware that GM would willfully not inform him of the Defect, which affects the safety of his vehicle, and that the Defect could manifest outside of the durational limit of the Warranty, despite GM's knowledge of this. See Carlson v. Gen. Motors Corp., 883 F.2d 287 (4th Cir. 1989), cert. denied, 495 U.S. 904 (1990) ("proof that GM knew of and failed to disclose major, inherent product defects would obviously suggest that its imposition of the challenged 'durational limitations' on implied warranties constituted 'overreaching,' and that the disclaimers themselves were therefore 'unconscionable.'").

**TOLLING OF THE STATUTES OF LIMITATIONS**

97. Any applicable statute of limitations has been tolled by GM's knowing and active concealment of the CVT Defect and the misrepresentations and omissions alleged herein. Through no fault or lack of diligence, Plaintiff and members of the Class were deceived regarding the Class Vehicles and could not reasonably discover the Defect or GM's deception with respect to the Defect. GM and its agents continue to deny the existence and extent of the Defect, even when questioned by Plaintiff and members of the Class.

98. Plaintiff and members of the Class did not discover, and did not know of, any facts that would have caused a reasonable person to suspect that Defendant was concealing a defect and/or that the Class Vehicles contained the CVT Defect and the corresponding safety risk. As alleged herein, the existence of the CVT Defect was material to Plaintiff and members of the Class at all relevant times. Within the time period of any applicable statutes of limitations, Plaintiff and members of the Class could not have discovered through the exercise of reasonable diligence the existence of the Defect or that Defendant was concealing the Defect.

99. At all times, GM is and was under a continuous duty to disclose to Plaintiff and members of the Class the true standard, quality, and grade of the Class Vehicles and to disclose the CVT Defect and corresponding safety risk due to its exclusive and superior knowledge of the existence and extent of the Defect in the Class Vehicles.

100. GM knowingly, actively, and affirmatively concealed the facts alleged herein. Plaintiff and members of the Class reasonably relied on GM's knowing, active, and affirmative concealment.

101. For these reasons, all applicable statutes of limitation have been tolled based on the discovery rule and GM's fraudulent concealment, and GM is estopped from relying on any statutes of limitations in defense of this action.

## CLASS ACTION ALLEGATIONS

102. Plaintiff brings this lawsuit as a class action on behalf of himself and all others similarly situated as members of the proposed Class pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3). This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

103. The Class and Sub-Classes are defined as:

> **Class:** All persons and entities in the United States who purchased or leased a Class Vehicle (the "Nationwide Class" or "Class").
>
> **California Sub-Class:** All members of the Nationwide Class who reside in the State of California.

**CLRA Sub-Class:** All members of the California Sub-Class who are "consumers" within the meaning of California Civil Code § 1761(d).

**Implied Warranty Sub-Class:** All members of the Nationwide Class who purchased or leased their vehicles in the State of California.

104. Excluded from the Class and Sub-Classes are: (1) Defendant, any entity or division in which Defendant has a controlling interest, and its legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's staff; (3) any Judge sitting in the presiding state and/or federal court system who may hear an appeal of any judgment entered; and (4) those persons who have suffered personal injuries as a result of the facts alleged herein. Plaintiff reserves the right to amend the Class and Sub-Class definitions if discovery and further investigation reveal that the Class and Sub-Classes should be expanded or otherwise modified.

105. **Numerosity:** Although the exact number of Class Members is uncertain, and can only be ascertained through appropriate discovery, the number is significant enough such that joinder is impracticable. The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court. The Class Members are readily identifiable from information and records in Defendant's possession, custody, or control, as well as from records kept by the Department of Motor Vehicles.

106. **Typicality:** Plaintiff's claims are typical of the claims of the Class in that Plaintiff, like all Class Members, purchased or leased a Class Vehicle designed, manufactured, and distributed by GM. The representative Plaintiff, like all Class Members, has been damaged by Defendant's misconduct in that he has incurred or will incur the cost of repairing or replacing the defective Transmission System and/or its components. Furthermore, the factual bases of GM's misconduct are common to all Class Members and represent a common thread resulting in injury to the Class.

107. **Commonality:** There are numerous questions of law and fact common to Plaintiff and the Class that predominate over any question affecting Class Members individually. These common legal and factual issues include the following:

(a) Whether Class Vehicles suffer from defects relating to the Transmission System;

(b) Whether the defects relating to the Transmission System constitute an unreasonable safety risk;

(c) Whether Defendant knew about the defects pertaining to the Transmission System and, if so, how long Defendant has known of the defect;

(d) Whether the defective nature of the Transmission System constitutes a material fact;

(e) Whether Defendant has had an ongoing duty to disclose the defective nature of the Transmission System to Plaintiff and Class Members;

(f) Whether Plaintiff and the other Class Members are entitled to equitable relief, including a preliminary and/or a permanent injunction;

(g) Whether Defendant knew or reasonably should have known of the defects pertaining to the Transmission System before it sold and leased Class Vehicles to Class Members;

(h) Whether Defendant should be declared financially responsible for notifying the Class Members of problems with the Class Vehicles and for the costs and expenses of repairing and replacing the defective Transmission System and/or its components;

(i) Whether Defendant is obligated to inform Class Members of their right to seek reimbursement for having paid to diagnose, repair, or replace their defective Transmission System and/or its components;

(j) Whether Defendant breached the implied warranty of merchantability pursuant to the Magnuson-Moss Warranty Act;

(k) Whether Defendant breached the implied warranty of merchantability pursuant to the Song-Beverly Act;

(l) Whether Defendant breached its express warranties under California law; and

(m) Whether Defendant breached express warranties pursuant to the Magnuson-Moss Warranty Act.

108. **Adequate Representation:** Plaintiff will fairly and adequately protect the interests of the Class Members. Plaintiff has retained attorneys experienced in the prosecution of

class actions, including consumer and product defect class actions, and Plaintiff intends to vigorously prosecute this action.

109. **Predominance and Superiority:** Plaintiff and Class Members have all suffered, and will continue to suffer, harm and damages as a result of Defendant's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy. Because of the relatively small size of the individual Class Members' claims, it is likely that only a few Class Members could afford to seek legal redress, and Defendant's misconduct will continue unabated without remedy or relief. Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that it will conserve the resources of the courts and the litigants and promote consistency and efficiency of adjudication.

**FIRST CAUSE OF ACTION**

**(Violation of California's Consumers Legal Remedies Act,**

**California Civil Code § 1750, *et seq.*)**

**On Behalf of the CLRA Sub-Class**

110. Plaintiff John Williams ("California Plaintiff") incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

111. California Plaintiff brings this cause of action on behalf of himself and the CLRA Sub-Class.

112. Defendant is a "person" as defined by California Civil Code § 1761(c).

113. California Plaintiff and the CLRA Sub-Class members are "consumers" within the meaning of California Civil Code § 1761(d) because they purchased or leased their Class Vehicles primarily for personal, family, or household use.

114. By failing to disclose and concealing the defective nature of the Transmission System from California Plaintiff and prospective CLRA Sub-Class members, Defendant violated California Civil Code § 1770(a), as it represented that the Class Vehicles and their Transmission

Systems had characteristics and benefits that they do not have and represented that the Class Vehicles and their Transmission Systems were of a particular standard, quality, or grade when they were actually of another. See Cal. Civ. Code §§ 1770(a)(5) & (7).

115. Defendant's unfair and deceptive acts or practices occurred repeatedly in Defendant's trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

116. Defendant knew that the Class Vehicles and their Transmission Systems suffered from an inherent defect, were defectively designed, and were not suitable for their intended use.

117. As a result of their reliance on Defendant's omissions, owners and/or lessees of the Class Vehicles, including California Plaintiff, suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the CVT Defect, California Plaintiff and the CLRA Sub-Class members were harmed and suffered actual damages in that the Class Vehicles' Transmission Systems and their components are substantially certain to fail before their expected useful life has run.

118. Defendant was under a duty to California Plaintiff and the CLRA Sub-Class members to disclose the defective nature of the Transmission System and/or the associated repair costs because:

(a) Defendant was in a superior position to know the true state of facts about the safety defect in the Class Vehicles' Transmission System;

(b) California Plaintiff and the CLRA Sub-Class members could not reasonably have been expected to learn or discover that their Transmission System had a dangerous safety defect until it manifested; and

(c) Defendant knew that California Plaintiff and the CLRA Sub-Class members could not reasonably have been expected to learn of or discover the safety defect.

119. In failing to disclose the defective nature of the Transmission System, Defendant knowingly and intentionally concealed material facts and breached its duty not to do so.

120. The facts Defendant concealed from or failed to disclose to California Plaintiff and the CLRA Sub-Class members are material in that a reasonable consumer would have considered

them to be important in deciding whether to purchase or lease the Class Vehicles or pay less. Had California Plaintiff and the CLRA Sub-Class members known that the Class Vehicles' Transmission System was defective, they would not have purchased or leased the Class Vehicles or would have paid less for them.

121. California Plaintiff and the CLRA Sub-Class members are reasonable consumers who do not expect the Transmission Systems installed in their vehicles to exhibit problems such as the CVT Defect. This is the reasonable and objective consumer expectation relating to a vehicle's transmission.

122. As a direct and proximate result of Defendant's unfair or deceptive acts or practices, California Plaintiff and the CLRA Sub-Class members suffered and will continue to suffer actual damages.

123. California Plaintiff and the CLRA Sub-Class members are entitled to equitable relief.

124. California Plaintiff is providing Defendant with notice of its violations of the CLRA pursuant to California Civil Code § 1782(a). If, within 30 days, Defendant fails to provide appropriate relief for its violations of the CLRA, California Plaintiff will amend this Complaint to seek monetary, compensatory, and punitive damages, in addition to the injunctive and equitable relief that he seeks now on behalf of himself and the CLRA Sub-Class.

**SECOND CAUSE OF ACTION**

**(Violation of California Business & Professions Code § 17200, *et seq.*)**

**On Behalf of the California Sub-Class**

125. California Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

126. California Plaintiff brings this cause of action on behalf of himself and the California Sub-Class ("CA Sub-Class").

127. As a result of his reliance on Defendant's omissions, owners and/or lessees of the Class Vehicles, including California Plaintiff, suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the CVT Defect, California

Plaintiff and the CA Sub-Class members were harmed and suffered actual damages in that the Class Vehicles' Transmission System and/or its components are substantially certain to fail before their expected useful life has run.

128. California Business & Professions Code § 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

129. California Plaintiff and the CA Sub-Class members are reasonable consumers who do not expect their Transmission Systems to exhibit problems such as slipping, shudder, loss of forward gear, or sudden loss of motive power under normal conditions.

130. Defendant knew the Class Vehicles and their Transmission Systems were defectively designed or manufactured, would fail prematurely, and were not suitable for their intended use.

131. In failing to disclose the CVT Defect, Defendant knowingly and intentionally concealed material facts and breached its duty not to do so.

132. Defendant was under a duty to California Plaintiff and the CA Sub-Class members to disclose the defective nature of the Class Vehicles and their Transmission Systems because:

(a) Defendant was in a superior position to know the true state of facts about the safety defect in the Class Vehicles' Transmission Systems; and

(b) Defendant actively concealed the defective nature of the Class Vehicles and their Transmission Systems from California Plaintiff and the CA Sub-Class.

133. The facts Defendant concealed from or failed to disclose to California Plaintiff and the CA Sub-Class members are material in that a reasonable person would have considered them to be important in deciding whether to purchase or lease Class Vehicles. Had they known of the CVT Defect, California Plaintiff and the other CA Sub-Class members would have paid less for Class Vehicles or would not have purchased or leased them at all.

134. Defendant continued to conceal the defective nature of the Class Vehicles and their Transmission Systems even after California Plaintiff and the other CA Sub-Class members began to report problems.

135. Defendant's conduct was and is likely to deceive consumers.

136. Defendant's acts, conduct, and practices were unlawful, in that they constituted:

(a) Violations of California's Consumers Legal Remedies Act;

(b) Violations of the Song-Beverly Consumer Warranty Act;

(c) Violations of the Magnuson-Moss Warranty Act; and

(d) Breach of Express Warranty under California Commercial Code § 2313.

137. By its conduct, Defendant has engaged in unfair competition and unlawful, unfair, and fraudulent business practices.

138. Defendant's unfair or deceptive acts or practices occurred repeatedly in Defendant's trade or business and were capable of deceiving a substantial portion of the purchasing public.

139. As a direct and proximate result of Defendant's unfair and deceptive practices, California Plaintiff and the other CA Sub-Class members have suffered and will continue to suffer actual damages.

140. Defendant has been unjustly enriched and should be required to make restitution to California Plaintiff and the other CA Sub-Class members pursuant to §§ 17203 and 17204 of the Business & Professions Code.

**THIRD CAUSE OF ACTION**

**(Breach of Implied Warranty Pursuant to Song-Beverly Consumer Warranty Act, California Civil Code §§ 1792 and 1791.1, *et seq.*)**

**On Behalf of the Implied Warranty Sub-Class**

141. California Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

142. California Plaintiff brings this cause of action against Defendant on behalf of himself and the Implied Warranty Sub-Class ("IW Sub-Class").

143. Defendant was at all relevant times the manufacturer, distributor, warrantor, and/or seller of the Class Vehicles. Defendant knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

144. Defendant provided California Plaintiff and the IW Sub-Class members with an implied warranty that the Class Vehicles and their components and parts are merchantable and fit for the ordinary purposes for which they were sold. However, the Class Vehicles and their Transmission Systems are not fit for their ordinary purpose of providing reasonably reliable and safe transportation because, inter alia, the Class Vehicles and their Transmission Systems suffered from an inherent defect at the time of sale and thereafter and are not fit for their particular purpose of providing safe and reliable transportation.

145. Defendant impliedly warranted that the Class Vehicles were of merchantable quality and fit for their intended use. This implied warranty included, among other things: (i) a warranty that the Class Vehicles and their Transmission Systems, which were manufactured, supplied, distributed, and/or sold by GM, would provide safe and reliable transportation; and (ii) a warranty that the Class Vehicles and their Transmission Systems would be fit for their intended use.

146. Contrary to the applicable implied warranties, the Class Vehicles and their Transmission Systems at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing California Plaintiff and the IW Sub-Class members with reliable, durable, and safe transportation. Instead, the Class Vehicles are defective, including the defective Transmission Systems.

147. The CVT Defect is inherent and was present in each Class Vehicle at the time of sale.

148. As a result of Defendant's breach of the applicable implied warranties, owners and/or lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the CVT Defect, California Plaintiff and the IW Sub-Class members were harmed and suffered actual damages in that the Class Vehicles' Transmission Systems and/or their components are substantially certain to fail before their expected useful life has run.

149. Defendant's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use in violation of California

Civil Code §§ 1792 and 1791.1. California Plaintiff and the IW Sub-Class are entitled to the remedies afforded by California Civil Code § 1794, including actual damages, restitution, diminution in value, a civil penalty of up to two times actual damages for GM's willful violation, and reasonable attorneys' fees and costs.

**FOURTH CAUSE OF ACTION**

**(Breach of Express Warranty Pursuant to Cal. Com. Code § 2313)**

**On Behalf of the California Sub-Class**

150. California Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

151. California Plaintiff brings this cause of action on behalf of himself and the CA Sub-Class.

152. Defendant provided all purchasers and lessees of the Class Vehicles with an express warranty described infra, which became a material part of the bargain. Accordingly, Defendant's express warranty is an express warranty under California law.

153. The Transmission System was manufactured and/or installed in the Class Vehicles by Defendant and is covered by the express warranty.

154. In a section entitled "New Vehicle Limited Warranty," Defendant's express warranty provides, in relevant part, that "GM will repair or replace any part that is defective in material or workmanship under normal use." The warranty further provides that "[a]ll repairs/replacements made under this warranty are free of charge." GM's 5-year/60,000-mile Limited Powertrain Warranty expressly covers the transmission and its internal components.

155. Defendant breached the express warranties by selling and leasing Class Vehicles with Transmission Systems that were defective, requiring repair or replacement within the warranty period, and refusing to honor the express warranty by repairing or replacing, free of charge, the Transmission System, or by performing superficial repairs—such as replacing unrelated components and merely "topping off" transmission fluid—that fail to correct the root cause of the Defect. In addition, to the extent Defendant replaced Class Members' defective Transmission Systems, it did so with similarly defective units, thus failing to "repair" the defect.

156. Plaintiff was not required to notify GM of the breach, or was excused from doing so, because affording GM a reasonable opportunity to cure its breach of written warranty would have been futile. Defendant was also on notice of the defect from complaints and service requests it received from Class Members, from repairs and/or replacements of the Transmission Systems, and from other internal sources.

157. As a direct and proximate cause of Defendant's breach, Plaintiff and the other Class Members have suffered, and continue to suffer, damages, including economic damages at the point of sale or lease. Additionally, Plaintiff and the other Class Members have incurred or will incur economic damages at the point of repair in the form of the cost of repair.

158. Plaintiff and the other Class Members are entitled to legal and equitable relief against Defendant, including actual damages, consequential damages, specific performance, attorneys' fees, costs of suit, and other relief as appropriate.

**FIFTH CAUSE OF ACTION**

**(Negligence)**

**On Behalf of the Nationwide Class, or, in the Alternative, the California Sub-Class**

159. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

160. Plaintiff brings this cause of action on behalf of himself and the Class or, alternatively, the California Sub-Class against Defendant.

161. Defendant had a duty to design, manufacture, and test a product that would be safe for its intended and foreseeable uses and users, including the uses to which its products were put by Plaintiff and Class Members. Defendant breached this duty because it was negligent in the design, development, manufacture, and testing of the continuously variable transmissions installed in the Class Vehicles.

162. Defendant was negligent because it knew, or in the exercise of reasonable care should have known, that vehicles equipped with the defective Transmission Systems pose an unreasonable risk of injury to Plaintiff, Class Members, other motorists, pedestrians, and the public at large.

163. As a direct, reasonably foreseeable, and proximate result of Defendant's failure to exercise reasonable care to inform Plaintiff and Class Members about the CVT Defect or to provide an appropriate repair, Plaintiff and Class Members have suffered damages in that they paid more than they otherwise would have for Class Vehicles that are of diminished value and require expensive diagnosis and repair.

164. Plaintiff and Class Members could not have prevented the damages caused by Defendant's negligence through the exercise of reasonable diligence and did not contribute in any way to Defendant's failure to provide appropriate notice and repair. Because Defendant acted with reckless disregard for the safety of Plaintiff and Class Members, Plaintiff also seeks an award of exemplary damages to the extent permitted by law.

**SIXTH CAUSE OF ACTION**

**(Breach of Express Warranty under the**

**Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq*.)**

**(On Behalf of the Nationwide Class, or, in the Alternative, on Behalf of All Sub-Classes Against Defendant)**

165. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

166. Plaintiff brings this cause of action on behalf of himself and on behalf of the Class against Defendant.

167. Defendant provided all purchasers and lessees of the Class Vehicles with an express warranty described infra, which became a material part of the bargain.

168. The Transmission System and its component parts were manufactured and/or installed in the Class Vehicles by Defendant and are covered by the express warranty.

169. In a section entitled "New Vehicle Limited Warranty," Defendant's express warranty provides, in relevant part, that it "covers repairs to correct any vehicle defect related to materials or workmanship occurring during the warranty period, excluding slight noise, vibrations, or other normal characteristics of the vehicle. Needed repairs will be performed using new,

remanufactured, or refurbished parts." The warranty further provides that "Warranty repairs, including towing, parts, and labor, will be made at no charge."

170. Defendant breached the express warranties by selling and leasing Class Vehicles with Transmission Systems that were defective, requiring repair or replacement within the warranty period, and refusing to honor the express warranty by repairing or replacing, free of charge, the Transmission System and its component parts. GM has failed to "repair" the defects as alleged herein.

171. Plaintiff was not required to notify GM of the breach, or was excused from doing so, because affording GM a reasonable opportunity to cure its breach of written warranty would have been futile. Defendant was also on notice of the defect from complaints and service requests it received from Class Members, from repairs and/or replacements of the Transmission System, and from other internal sources.

172. As a direct and proximate cause of Defendant's breach, Plaintiff and the other Class Members have suffered, and continue to suffer, damages, including economic damages at the point of sale or lease. Additionally, Plaintiff and the other Class Members have incurred or will incur economic damages at the point of repair in the form of the cost of repair.

**173.** Plaintiff and the other Class Members are entitled to legal and equitable relief against Defendant, including actual damages, consequential damages, specific performance, attorneys' fees, costs of suit, and other relief as appropriate.

**SEVENTH CAUSE OF ACTION**

**(Breach of Implied Warranty Pursuant to the**

**Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*)**

**On Behalf of the Nationwide Class, or, in the Alternative, on Behalf of All Sub-Classes**

174. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

175. Plaintiff brings this cause of action on behalf of himself and the Class against Defendant.

176. Plaintiff and Class Members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3). Defendant is a "supplier" and "warrantor" within the meaning of 15 U.S.C. §§ 2301(4)–(5), and the Class Vehicles are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

177. Defendant impliedly warranted to purchasers and lessees of the Class Vehicles that the Class Vehicles and their component parts were merchantable and fit for the ordinary purposes for which they were sold. Defendant's implied warranty of merchantability is an "implied warranty" within the meaning of 15 U.S.C. § 2301(7). Because Defendant issued written warranties in connection with the sale of the Class Vehicles, including its New Vehicle Limited Warranty and 5-year/60,000-mile Limited Powertrain Warranty, it may not disclaim, modify, or limit that implied warranty except as permitted under 15 U.S.C. § 2308.

178. The Transmission System and its component parts were manufactured and/or installed in the Class Vehicles by Defendant and were required to be merchantable and fit for the ordinary purpose of providing safe and reliable transportation.

179. Defendant breached the implied warranty of merchantability by selling and leasing Class Vehicles with Transmission Systems that were defective and not fit for their ordinary purpose at the time of sale and thereafter, and by failing to repair or replace the Transmission System so as to conform the Class Vehicles to the warranty. GM has failed to "repair" the defect as alleged herein.

180. Plaintiff was not required to notify GM of the breach, or was excused from doing so, because affording GM a reasonable opportunity to cure would have been futile. Defendant was also on notice of the defect from complaints and service requests it received from Class Members, from repairs and/or replacements of the Transmission System, and from other internal sources.

181. As a direct and proximate cause of Defendant's breach, Plaintiff and the other Class Members have suffered, and continue to suffer, damages, including economic damages at the point of sale or lease and at the point of repair. Plaintiff and the other Class Members are entitled to legal and equitable relief against Defendant, including actual damages, consequential damages,

diminution in value, specific performance, and costs, including statutory attorneys' fees pursuant to 15 U.S.C. § 2310(d).

**EIGHTH CAUSE OF ACTION**

**(For Unjust Enrichment)**

**On Behalf of the Nationwide Class, or, in the Alternative, on Behalf of All Sub-Classes**

182. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

183. Plaintiff brings this cause of action on behalf of himself and the Class or, alternatively, on behalf of all Sub-Classes against Defendant.

184. Defendant has received and retained a benefit from Plaintiff and the members of the Class, and inequity has resulted.

185. As a direct and proximate result of Defendant's failure to disclose known defects, Defendant has profited through the sale and lease of the Class Vehicles, the value of which was artificially inflated by Defendant's concealment of and omissions regarding the CVT Defect. Defendant charged higher prices for the vehicles than the vehicles' true value, and Plaintiff and Class Members thus overpaid for the Class Vehicles. Although these vehicles are purchased through Defendant's authorized dealers and distributors, the money from the vehicle sales flows directly back to Defendant.

186. Additionally, as a direct and proximate result of Defendant's failure to disclose known defects in the Class Vehicles, Plaintiff and Class Members have vehicles that require repeated, high-cost repairs that have conferred an unjust substantial benefit upon Defendant.

187. Defendant has been unjustly enriched due to the known defects in the Class Vehicles through the use of money paid that earned interest or otherwise added to Defendant's profits when said money should have remained with Plaintiff and Class Members.

188. Plaintiff and Class Members were not aware of the true facts regarding the Defect in the Class Vehicles and did not benefit from Defendant's unjust conduct.

189. As a result of Defendant's unjust enrichment, Plaintiff and Class Members have suffered damages and are entitled to restitution of, and/or non-restitutionary disgorgement of, the financial profits that Defendant obtained as a result of its unjust conduct, plus interest.

**NINTH CAUSE OF ACTION**

**(For Fraud by Omission or Fraudulent Concealment)**

**On Behalf of the Nationwide Class, or, in the Alternative, on Behalf of All Sub-Classes**

190. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

191. Plaintiff brings this cause of action on behalf of himself and the Class or, alternatively, on behalf of all Sub-Classes against Defendant.

192. Defendant knew that the Class Vehicles suffered from an inherent CVT Defect, were defectively designed and/or manufactured, and were not suitable for their intended use.

193. Defendant concealed from and failed to disclose to Plaintiff and Class Members the defective nature of the Class Vehicles.

194. Defendant was under a duty to Plaintiff and Class Members to disclose the defective nature of the Class Vehicles because:

(a) Defendant was in a superior position to know the true state of facts about the safety defect contained in the Class Vehicles;

(b) The omitted facts were material because they directly impact the safety of the Class Vehicles;

(c) Defendant knew the omitted facts regarding the CVT Defect were not known to or reasonably discoverable by Plaintiff and Class Members;

(d) Defendant made partial disclosures about the quality of the Class Vehicles without revealing their true defective nature; and

(e) Defendant actively concealed the defective nature of the Class Vehicles from Plaintiff and Class Members.

195. The facts concealed or not disclosed by Defendant to Plaintiff and the other Class Members are material in that a reasonable person would have considered them to be important in

deciding whether to purchase or lease Defendant's Class Vehicles or pay a lesser price for them. Whether a vehicle's Transmission System is defective, which can suddenly cause loss of motive power and impair the driver's ability to maintain control and avoid collision, is a material safety concern. Had Plaintiff and Class Members known about the defective nature of the Class Vehicles, they would not have purchased or leased the Class Vehicles or would have paid less for them.

196. Defendant concealed or failed to disclose the true nature of the design and/or manufacturing defects contained in the Class Vehicles to induce Plaintiff and Class Members to act thereon. Plaintiff and the other Class Members justifiably relied on Defendant's omissions to their detriment. This detriment is evident from Plaintiff's and Class Members' purchase or lease of Defendant's defective Class Vehicles.

197. Defendant continued to conceal the defective nature of the Class Vehicles even after Class Members began to report the problems. Indeed, Defendant continues to cover up and conceal the true nature of the problem today.

198. As a direct and proximate result of Defendant's misconduct, Plaintiff and Class Members have suffered and will continue to suffer actual damages. Plaintiff and the Class reserve their right to elect either to (a) rescind their purchase or lease of the defective Vehicles and obtain restitution or (b) affirm their purchase or lease of the defective Vehicles and recover damages.

199. Defendant's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and the Class's rights and well-being to enrich Defendant. Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## RELIEF REQUESTED

200. Plaintiff, on behalf of himself and all others similarly situated, requests the Court enter judgment against Defendant, as follows:

(a) An order certifying the proposed Class and Sub-Classes, designating Plaintiff as named representative of the Class, and designating the undersigned as Class Counsel;

(b) A declaration that Defendant is financially responsible for notifying all Class Members about the defective nature of the Transmission System;

(c) An order enjoining Defendant from further deceptive distribution, sales, and lease practices with respect to Class Vehicles; compelling Defendant to issue a voluntary recall for the Class Vehicles pursuant to 49 U.S.C. § 30118(a); compelling Defendant to repair and eliminate the CVT Defect from every Class Vehicle; enjoining Defendant from selling the Class Vehicles with the misleading information; and/or compelling Defendant to reform its warranty, in a manner deemed appropriate by the Court, to cover the injury alleged and to notify all Class Members that such warranty has been reformed;

(d) An award to Plaintiff and the Class for compensatory, exemplary, and statutory damages, including interest, in an amount to be proven at trial;

(e) Any and all remedies provided pursuant to the Song-Beverly Consumer Warranty Act and the Magnuson-Moss Warranty Act, including civil penalties where available;

(f) A declaration that Defendant must disgorge, for the benefit of the Class, all or part of the ill-gotten profits it received from the sale or lease of the Class Vehicles, or make full restitution to Plaintiff and Class Members;

(g) An award of attorneys' fees and costs, as allowed by law;

(h) An award of pre-judgment and post-judgment interest, as provided by law;

(i) Leave to amend the Complaint to conform to the evidence produced at trial and to add additional plaintiffs and subclasses; and

(j) Such other relief as may be appropriate under the circumstances.

**DEMAND FOR JURY TRIAL**

201. Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby demands a trial by jury of all issues in this action so triable.

Dated: September 15, 2026

Respectfully submitted,

/s/ Russell D. Paul

Russell D. Paul (DE Bar #4647)
**BERGER MONTAGUE PC**
800 N. West Street, Suite 200
Wilmington, DE 19801
Tel.: 302-691-9545
rpaul@bergermontague.com

Adam A. Edwards
William A. Ladnier
**MILBERG, PLCC**
800 S. Gay Street
Suite 1100
Knoxville, TN 37929
Tel.: 865-247-0080
aedwards@milberg.com
wladnier@milberg.com

Tarek H. Zohdy
Laura E. Goolsby
Ahmed H. Yousef
**DRAKE LAW FIRM**
19935 Venture Blvd.,
Third Floor
Woodland Hills, CA 91364
Tel.: 888-315-5721
tarek@drakelawgroup.com
lgoolsby@drakelawgroup.com
ahmed@drakelawgroup.com

*Attorneys for Plaintiff John Williams and the Proposed Class*